**SO ORDERED.**

**SIGNED this 23 day of May, 2007.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| FLOYD ALLEN KNOX | ) | No. 07-11082 |
| and LISA MARIE KNOX | ) | Chapter 13 |
| | ) | |
| Debtors | ) | |

**M E M O R A N D U M**

This case is before court on an objection to confirmation filed by a creditor, Tina Rochelle Knox Harris, the former wife of debtor Floyd Knox.[1] After reviewing the debtor's Chapter 13 plan and the objection, the testimonies of Floyd Knox and Ms. Harris, and the arguments of the parties, the court will overrule the objection and confirm the plan.

---

[1] Ms. Harris is not represented by counsel and she did not seek leave to retain counsel.

1

On January 20, 2006, Mr. Knox and Ms. Harris entered into a marital dissolution agreement, which was incorporated into a final decree of divorce entered by the Circuit Court of Rhea County, Tennessee. The agreement allocated the parties' debts between them, and among the debts that Mr. Knox was ordered to pay were a debt for TVA bank cards and a debt for a Household credit card. The marital dissolution agreement further provides:

> With respect to each parties' [*sic*] responsibility for the payment of the aforementioned debts and liabilities and the parties' aforementioned obligation to hold the other party harmless for the payment thereof, the parties understand and agree that their obligations are non-dischargaable [*sic*] debts under the *United States Bankruptcy Code (11 USC 523[a][15])*. This obligation is part of a fair and equitable division of the parties' assets and liabilities. In the event that either party files a personal bankruptcy, that party specifically agrees that none of the aforementioned obligations may be discharged in such a proceeding. It is the specific intent of the parties that the aforementioned debts be considered as non-dischargable [*sic*] in bankruptcy. However, in the event that either party files a bankruptcy action, the filing party agrees to reaffirm or to refinance the obligations set forth above in order to hold harmless the other party.

The marital dissolution agreement did not characterize the debt obligation as alimony, maintenance, support, or otherwise. It provided for child support but not alimony or spousal support.

On March 22, 2007, the debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Their proposed Chapter 13 Plan provides for holders of unsecured nonpriority claims to receive a total of $3,200. According to the debtors' Schedule F (Creditors Holding Unsecured Nonpriority Claims), such claims total approximately $27,000 and include the TVA bank card debt (under the name Fia Csna) in the amount of $1,466 and a debt to Ms. Harris (which is apparently the debt on the Household credit card) of $6,652. Thus, the plan provides for a dividend

on unsecured claims of about 12%. Ms. Harris contends that the plan must provide for the full payment of the two outstanding debts that the divorce court ordered Mr. Knox to pay.[2]

Section 1322(a)(2) of the Bankruptcy Code requires that a Chapter 13 plan "provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." Section 507(a)(1) of the Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-9, 119 Stat. 23, accords first priority status to "domestic support obligations." That term is defined by § 101(14A) of the Code:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

---

[2] It appears that the other debts that Mr. Knox was ordered to pay were either satisfied prepetition or are not obligations of Ms. Harris that the creditors could call on her to pay.

        (i) a separation agreement, divorce decree, or property settlement agreement;

        (ii) an order of a court of record; or

        (iii) a determination made in accordance with applicable non-bankruptcy law by a governmental unit; and

    (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

There is no dispute that paragraphs (A), (C), and (D) are satisfied. Rather, the resolution of this matter turns on whether Mr. Knox's obligation to pay the debts is "in the nature of alimony, maintenance, or support."

As one bankruptcy court has recently explained:

> The definition of "domestic support obligation" in Section 101(14A) was derived in significant part from the definition of a non-dischargeable debt for alimony, maintenance and support contained in pre-BAPCPA Section 523(a)(5). Case law construing what constituted non-dischargeable alimony, maintenance and support under former Section 523(a)(5) is relevant in determining what constitutes a debt "in the nature of alimony, maintenance, or support" under Section 101(14A).

*Dobbs v. Loehrs (In re Loehrs)*, Ch. 7 Case No. 06-10670-R, Adv. No. 06-1211-R, 2007 WL 188364, at *3 n.3 (Bankr. N.D. Okla. Jan. 22, 2007). In 1983, the Sixth Circuit held that three factors must be considered in determining whether an assumption of joint debts as part of a divorce proceeding creates an obligation that is "actually in the nature of alimony, maintenance, or support": (1) whether the state court or the parties "*intended* to create an obligation to provide support through the assumption of the joint debts"; (2) whether the assumption has the effect of providing support in light of the recipient's present needs; and (3) whether the amount of the debt assumed is "so ex-

cessive that it is manifestly unreasonable under traditional concepts of support." *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109-10 (6th Cir. 1983). If the first prong of the analysis is not satisfied, the court need proceed no further. *Id.* at 1109. Ten years later, the Sixth Circuit limited the *Calhoun* analysis to situations in which the state court did not denominate the award as support. *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520-21 (6th Cir. 1993).

In 1998, the court reconciled *Calhoun* and *Fitzgerald*, explaining that an award that is designated as support and that has the traditional state law indicia of a support obligation is to be conclusively presumed to be support by the bankruptcy court. *Sorah v. Sorah*, 163 F. 3d 397, 401 (6th Cir. 1998). Under *Sorah,* a non-debtor who proves that the state court structured the obligation as a support obligation, considering "traditional state law indicia that are consistent with a support obligation," has satisfied his or her burden of proof that the debt is nondischargeable. *Id.* If the non-debtor carries this burden, "[t]he burden then shifts to the debtor spouse to demonstrate that although the obligation is of the *type* that may not be discharged in bankruptcy, its *amount* is unreasonable in light of the debtor spouse's financial circumstances." *Id.* at 401. Thus, proof that the state court structured the award as alimony, maintenance, or support satisfies the first prong of the *Calhoun* analysis and eliminates the second prong: "When the obligation is so structured, the only response available to the debtor spouse is to demonstrate that the obligation is unreasonable in light of the debtor's financial circumstances. This is the third prong of the *Calhoun* test." *Id.* at 402 (citing *Calhoun*, 715 F.2d at 1110).

The marital dissolution agreement in this case did not designate the obligations in question as support. Accordingly, the *Sorah* analysis has no application here, and the court must proceed with

the *Calhoun* analysis. The marital dissolution agreement does not evidence an intent that the allocation of debts to Mr. Knox operate as support for Ms. Harris or the parties' children. Ms. Harris testified that alimony was never discussed in the negotiation of the agreement and there is no evidence that the allocation of debts was included as a substitute for alimony or child or spousal support. Indeed, the marital dissolution agreement indicates that the allocation of debts was intended as "part of a fair and equitable division of the parties' assets and liabilities," rather than as part of an award of support. In addition, the language quoted above from the marital dissolution agreement characterizes the debt allocation as falling within § 523(a)(15) of the Bankruptcy Code, which applies to divorce-related debts that are *not* in the nature of alimony, maintenance, or support. The court thus finds that the state court and the parties did not intend to create an obligation to provide support. Accordingly, the court need proceed no further. *Calhoun*, 715 F.2d at 1109.[3]

Because Mr. Knox's obligation to his former spouse to pay the TVA and Associates credit card debts is not "in the nature of alimony, maintenance, or support," it does not constitute a "domestic support obligation" that must be paid in full under a Chapter 13 plan. This conclusion is not affected by the language quoted from the marital dissolution agreement because, although debts to a former spouse (incurred in the course of a divorce proceeding) that are not "domestic support obligations" are nondischargeable in a Chapter 7 case, 11 U.S.C. § 523(a)(15), such debts are fully dischargeable in a Chapter 13 case. *Id.* § 1328(a)(2). Thus, the parties' agreement that § 523(a)(15)

---

[3] The court notes regarding *Calhoun*'s second factor that, although Ms. Harris was not working at the time, she presented no evidence that she could not obtain employment or that the allocation of debts to Mr. Knox was otherwise necessary to provide for her or the children's support. The third *Calhoun* factor is not pertinent here in any event, as Mr. Knox does not challenge the reasonableness of the amounts of the debts that he was ordered to pay.

applies to the allocation of debts – even if it were enforceable – is of no relevance. Section 523(a)(15) debts are only nondischargeable in Chapter 13 when the discharge is pursuant to 11 U.S.C. § 1328(b), the hardship discharge section, and that section is not applicable here.

Ms. Harris also asserted that the debtors could afford to pay a larger dividend on general unsecured claims because Mr. Knox has additional assets and income not disclosed in his bankruptcy papers. After hearing the testimony of each party, the court finds that the debtors' Schedule I (Current Income of Individual Debtor(s)) and Schedule J (Current Expenditures of Individual Debtor(s)) are accurate and that all of the living expenses disclosed on Schedule J are reasonable. Accordingly, the court concludes that the debtors' Chapter 13 Plan provides that all of their "projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). That is all the debtors are required to do.

For the foregoing reasons, the court will enter a separate order – to be submitted by the Chapter 13 trustee – overruling Ms. Harris's objection to confirmation and confirming the debtors' Chapter 13 Plan.

###